**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**LISA MARKS**                                                                                    **PLAINTIFF**

**V.**                               **CASE NO. 3:16-CV-169-BD**

**NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration**                                                 **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa Michelle Marks has appealed the final decision of the Commissioner of the Social Security Administration partially denying her claims for disability benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

**Background**

Ms. Marks alleges that she became limited in her ability to work due to psoriasis, degenerative disk disease, osteoarthritis, scoliosis, carpel tunnel syndrome, and hepatitis C. (SSA record at 78-79, 93-94) After conducting a hearing, the Administrative Law Judge[2] ("ALJ") partially denied Ms. Marks's claims. He found that Ms. Marks became disabled on January 11, 2016, when she met the requirements of 20 C.F.R. pt. 404, subpt. P, App.1, listing 3.02 for chronic obstructive pulmonary disease. (*Id.* at 10) The ALJ also concluded, however, that prior to meeting listing 3.02, Ms. Marks had not been under a

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

[2] The Honorable Mark Schafer.

disability within the meaning of the Social Security Act ("the Act") from August 19, 2013, her alleged onset date, through September 30, 2015, her last-insured date. (*Id*. at 11-23) The Appeals Council denied the request for a review of the ALJ's decision, making the decision the final decision of the Commissioner. (*Id*. at 1-3) Ms. Marks then filed her complaint initiating this appeal. (Docket entry #2)

Ms. Marks was 48 years old at the time of the hearing and lived with her aunt, uncle, and their two small children. (SSA record at 39-40, 55) She had a high school diploma, some college credit, and past work as a deli manager, deli worker, fast food supervisor, fast food cook, and inventory tallier. (*Id*. at 18, 40-42)

**The ALJ's Decision**

The ALJ found that Ms. Marks met the insured status requirements through September 30, 2015 and had not engaged in substantial gainful activity since August 19, 2013, her alleged onset date.  The ALJ found that Ms. Marks's degenerative disc disease, carpal tunnel syndrome, left shoulder strain with ligament tear, chronic obstructive pulmonary disease, obesity, and mood disorder were severe impairments.  He also found that she did not have an impairment or combination of impairments that met a listing until January 11, 2016.  (*Id.* at 11-13)  He further found that Ms. Marks's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (*Id*. at 17-18)

2

Based on these findings, the ALJ concluded that, during the time period prior to January 11, 2016, Ms. Marks retained the residual functional capacity ("RFC") for sedentary work, except that she would have to avoid excessive exposure to pulmonary irritants such as dust, smoke, and fumes; could perform frequent handling and fingering with bilateral upper extremities; would have to use a cane to ambulate; would require portable oxygen; and was limited to performing simple, routine, and repetitive job tasks where the supervision required is simple, direct, and concrete. (*Id*. at 14)

**Ms. Marks's Allegations**

Ms. Marks argues that the ALJ erred by finding that she could perform a limited range of sedentary work without first requesting a residual functional capacity assessment from a treating or examining physician or psychologist, by not imposing any reaching restrictions, by finding she could frequently finger and handle, and by failing to account for her obesity.  (#10 at pp. 35-39)

**Standard on Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Residual Functional Capacity**

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. Social Security Ruling 96-8p. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted).

Pointing to *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000), Ms. Marks asserts that the ALJ erred by not further developing the record by asking one of her treating physicians or an examining physician for a residual functional capacity assessment. The applicable regulations and case law, however, do not require that an ALJ obtain a residual functional capacity assessment from a treating source to complete the record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.")(quoting *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)); *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) (the ALJ is required to contact a treating or consulting physician for additional information only if the medical records presented do not provide sufficient evidence to make a decision on disability).

Nonetheless, the ALJ's residual functional capacity determination here is not supported by substantial evidence in the record. The ALJ found that Ms. Marks's torn

4

rotator cuff and carpal tunnel syndrome were severe impairments, but he did not impose restrictions to account for these impairments.

**Torn Rotator Cuff and Cervical Spine.** Sunil Gera, M.D., treated Ms. Marks for pain. On February 11, 2015, after Dr. Gera gave her medial branch blocks to relieve pain in her lumbar spine, Ms. Marks reported that she had good relief for a few hours but then the pain returned and she was having a lot of pain in the cervical area and shoulder. (*Id*. at 976-78) Ms. Marks had branch blocks to her lumbar spine again on February 24 and 26, 2015. On March 12, 2015, Ms. Marks reported she was having good relief for three to four hours from the block before her pain returned, and she was having a lot of pain in the neck, more on the left than on the right. (*Id*. at 968-69) Dr. Gera decided to proceed with radiofrequency neurolysis. (*Id*.)

On March 24, 2015, Ms. Marks reported to William Palmer, M.D., her primary care physician, that she was having shoulder pain. On examination, Dr. Palmer reported she had left shoulder pain with range of motion. (*Id*. at 1024) He ordered an x-ray and MRI of her shoulder. (*Id*. at 1025) The MRI of Ms. Marks's left shoulder showed a "high-grade partial-thickness articular sided supraspinatus tendon tear at its footprint measuring 5 mm." (*Id*. at 1015) An MRI of Ms. Marks's cervical spine showed degenerative disease at the C5-C6 level with mild disc space narrowing and desiccation. There was also mild posterior disc bulging at C5-C6. (981-82) Ms. Marks began physical therapy on April 17, 2015, stating that she wanted to have less shoulder pain.

5

On April 24, 2015, Ms. Marks reported to Dr. Gera that her back was better overall, but that she wanted Dr. Gera to address her neck pain. He treated her for pain in the left cervical area. (*Id.* at 1075-76) On June 3, 2015, she complained to Dr. Gera of a lot of pain in her left shoulder, which she could not abduct. He administered a shoulder injection, and she reported good relief. (*Id.* at 1073-74)

On June 9, 2015, Ms. Marks again reported shoulder pain to Dr. Palmer. She stated that physical therapy had not helped. He prescribed Lyrica and suggested that she follow up with her orthopedist, Spencer Guinn, M.D. On July 13, 2015, she again complained of limited use of her left shoulder to Dr. Palmer. (*Id.* at 1096) On July 29, 2015, Ms. Marks reported to her physical therapist that she wanted to be able to reach and to sleep through the night without shoulder pain. (*Id.* at 1254)

The ALJ properly found that Ms. Marks's tear of her left rotator cuff and degenerative disc disease were severe, but he did not account for the limitations these impairments imposed in determining her residual functional capacity. Despite her report of having relief after one shoulder injection, Ms. Marks consistently reported pain and limitation due to the torn rotator cuff in her left shoulder and degenerative disease in her cervical spine. Substantial evidence does not support the ALJ's finding that, in spite of these severe impairments, Ms. Marks could have performed sedentary work with no limitation on her ability to reach.

**Carpal Tunnel.** The ALJ's finding that Ms. Marks could perform frequent fingering and handling is not supported by substantial evidence in the record. A nerve conduction study on July 10, 2015, showed severe entrapment of the left median nerve and mild-bordering-on-moderate entrapment of the right median nerve as it coursed through the carpal tunnel. (*Id*. at 1123-24) On August 3, 2015, Ms. Marks reported that the numbness and tingling in her hands appeared to be worsening in spite of the fact that she had been wearing splints for a couple of weeks. Dr. Guinn warned her that if she had carpal tunnel release surgery, it could take a year or longer before the final outcome of the procedure was known, and it could result in worsening pain and loss of use of her arm or upper extremity. (*Id*. at 1232-34)  Dr. Guinn performed a left carpal tunnel release surgery on Ms. Marks on August 13, 2015. (*Id*. at 1316-17)  On September 24, 2015, Ms. Marks reported to Ronald South, M.D., a neurologist, that she was still having pain in her left hand following surgery.  He diagnosed her with gait disturbance, neck and limb pain, backache, and muscle weakness. (*Id*. at 1371-74)  A nerve conduction study performed February 10, 2016, showed carpal tunnel syndrome, with right worse than left medial compression at the wrist. (*Id*. at 1408)  A reasonable mind would conclude, based on the evidence in the record, that Ms. Marks's carpal tunnel syndrome would have prevented her from performing work requiring frequent fingering and handling.

**Obesity.** Ms. Marks asserts that obesity is a non-exertional impairment that "might significantly restrict a claimant's ability to perform the full range of sedentary

7

work." (#10 at 38) While it is true that obesity *might* restrict a person's ability to work, Ms. Marks never alleged that *she* had limitations due to obesity. Ms. Marks does not point to any records indicating a limitation based on her obesity. (#15 at 38-39) The ALJ considered Ms. Marks's obesity and found no evidence that obesity had any specific effect on her ability to work. (SSA record at 17) He acknowledged Ms. Marks's obesity and, as a result, limited her to sedentary work. (*Id*.) The ALJ properly assessed the effects of Ms. Marks's obesity.

**Conclusion**

After considering the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and remanded for action consistent with the opinion. This a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 19th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE